UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT J. KALINA         Plaintiff,         v.KING COUNTY JAIL et al.,         Defendants. | CASE NO. C05-0255-RSL-MJBREPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment constitutional rights in denying his request for additional medical treatment while incarcerated at the Regional Justice Center in Kent, Washington. Specifically, Plaintiff alleges that he contracted methicillin-resistant staphylococcus aureus ("MRSA") as a result of unsanitary conditions at the jail and that he suffered recurrent MRSA infections as a result of inadequate medical treatment. Plaintiff seeks damages in the amount of five million dollars, as well as compensation for future medical expenses incurred as a result of MRSA.

Defendants filed a motion for summary judgment to dismiss the claims set forth in Plaintiff's first amended complaint on grounds that there is no showing of an Eight Amendment violation, no showing of individual liability for deliberate indifference to Plaintiff's medical needs, and the supervisory defendants are entitled to qualified immunity. Plaintiff has filed a

REPORT AND RECOMMENDATION
Page -1-

motion to amend the complaint and stay the summary judgment motion. Having reviewed these motions and the opposition thereto, and the balance of the record, it is recommended that Plaintiff's motion to amend should be DENIED, Defendants' motion for summary judgment should be GRANTED, and Plaintiff's complaint should be DISMISSED with prejudice.

## II.  PROCEDURAL HISTORY

Plaintiff, who initially proceeded *pro se*, filed a first amended complaint on May 17, 2005. Dkt. #10. On July 18, 2005, Plaintiff's attorney entered his notice of appearance. Dkt. #26. Defendants filed their an answer to the amended complaint on July 28, 2005. Dkt. #28. On April 12, 2006, Defendants filed their motion for summary judgment. Dkt. #35. Based on the parties' stipulation to amend the briefing schedule to allow additional time for Plaintiff to file his opposition and for Defendants to file their reply (Dkt. #40), the Court re-noted the date for consideration of the summary judgment motion from May 5, 2006 to May 26, 2006. Dkt. #41. On May 11, 2006, Plaintiff moved to amend his complaint and stay the summary judgment motion. Dkt. #42. Defendants filed a response in opposition (Dkt. #43) and Plaintiff filed a reply (Dkt. #48). On May 22, 2006, Plaintiff filed a response opposing the summary judgment motion (Dkt. #44) and Defendants filed a reply (Dkt. #50). Oral argument on the summary judgment motion was held before Magistrate Judge Monica J. Benton on November 20, 2006. Dkt. #53.

## III.  FACTUAL BACKGROUND

A.  <u>Undisputed Facts</u>

Plaintiff's first amended complaint alleges that supervisor Della Lorenzen of King County Public Health's Jail Health Services, and John and Jane Does as medical personnel, provided inadequate treatment for a MRSA skin infection that manifested symptoms during his incarceration at the King County Department of Adult Detention's Regional Justice Center

REPORT AND RECOMMENDATION
Page -2-

Detention Facility ("RJC").  Plaintiff also alleges that his recurring MRSA symptoms and/or reinfection are a result of unsanitary conditions at the RJC.

(1) *Background on MRSA*

MRSA is a highly contagious type of an antibiotic resistant bacterium which is spread by skin-to-skin contact, openings in the skin, and contact with contaminated items. Dkt. #36, McHale Decl., Ex. A, citing to http://www.cdc.gov/ncidod/dhqp/ar_mrsa_ca_public.html. MRSA is common in crowded living and/or poor hygiene conditions.  *Id*.  MRSA colonize on the skin and symptoms usually manifest as skin infections, specifically as pimples or boils.  *Id.* Reoccurrence of symptoms can be can be minimized through good hygiene practices, including thoroughly washing hands, dressing skin lesions until healed, avoiding contact with other infected persons, and avoiding shared personal items (e.g., bed linens, towels, razors).  *Id.* at 6.

While staph infections, including MRSA, occur at higher frequency among persons in healthcare facilities who have weakened immune systems, other persons not similarly exposed may acquire MRSA in the community, known as community-associated MRSA or CA-MRSA. *Id.* at 5.  The CDC reports that in 2003, 12% of people with MRSA had CA-MRSA.  *Id.* Furthermore, CA-MRSA skin infections have been identified among certain populations that share close quarters, including team athletes, military recruits, and prisoners.  *Id.*

(2) *Plaintiff's Treatment While in Custody at the RJC*

Plaintiff was transferred from the Washington Corrections Center at Shelton, Washington to the RJC on July 27, 2004.  *Id*. para 3.  On January 2, 2005, Plaintiff was seen by Jail Health Services, Bill Johnston, R.N., after complaining of an inflamed knee with an abscess. Dkt. #37, Ex. D, at 1.  Initially, Plaintiff was treated with hot packs; the abscess was not draining.  *Id.*  On January 3, 2005, Plaintiff was seen by Dr. Kerri Ashling, who diagnosed cellulitis and prescribed an oral antibiotic and a pain reliever.  *Id.* at 3, 9.  Plaintiff was told to

REPORT AND RECOMMENDATION
Page -3-

notify personnel if the abscess began to drain. *Id.* On January 6, 2005, Plaintiff notified Jail Health Services personnel that his abscess was draining. *Id.* at 4. That evening, Plaintiff was treated by Cate Ditkoff, R.N., who suspected MRSA, dressed the abscess, and discussed hygiene and contagion issues with him. *Id.*

Plaintiff's medical records indicate that on January 7, 2005, Glenn Lirman, R.N.P., cultured the Plaintiff's draining abscess to determine MRSA infection and which antibiotics would successfully treat the infection. *Id.* at 4. Lirman also substituted the previously prescribed oral antibiotic and prescribed a stronger pain reliever to address the pain associated with the abscess. *Id.* at 4, 10. On January 11, 2005, laboratory reports confirmed Plaintiff's MRSA infection. *Id.* at 12. Later that day, and on January 8, 9, 10, 12, 14, 18, and 25 of 2005, Plaintiff was seen for subsequent wound care/dressing changes. *Id.* at 7-8. On January 25, 2005, Plaintiff's abscess had closed. *Id.* On February 9, 2005, Plaintiff had a final/follow-up visit with Dr. Ashling regarding the abscess. *Id.* at 8.

On February 3, 2005, Plaintiff filed a complaint with the RJC, stating that the clinic denied him a nasal culture test and additional medication to treat the MRSA infection. Dkt. #38, Ex. B. Plaintiff believed that a topical ointment was essential to treating a nasal MRSA colony. *Id.* No culture was done to determine whether a nasal colony of MRSA existed. *Id,* Ex. A. Della Lorenzen, a Personal Health Services Supervisor with Public Health Seattle-King County, stated that the Plaintiff's abscess had been treated appropriately and that further treatment could be obtained upon his release from custody. *Id.,* para. 12. Lorenzen indicates that the treatment requested by the Plaintiff was not routinely recommended, only suggested as a possible treatment protocol for patients with recurrent MRSA infections. *Id.,* para 11 and Ex. C. The chart notes contain no indication that Plaintiff had recurrent MRSA infection. *Id.*, para.

REPORT AND RECOMMENDATION
Page -4-

1  11.

2  On February 15, 2005, Plaintiff was transported back to the Washington Corrections
3  Center at Shelton, Washington.  Dkt. #36, para. 4.

4  B.  Disputed Facts

5  (1) *Level of MRSA Infection at the RJC.*

6  Plaintiff contends that MRSA infections were prevalent at the RJC.  He claims to have
7  observed 20-30 inmates at the RJC with similar symptoms, and that most of those inmates were
8  diagnosed with MRSA.  Dkt. #46, para. 4.  He also claims that MRSA likely would spread as
9  the jail facilities were grim and unsanitary.  *Id.* [1]

10  Mr. Danforth, an infection control practitioner and nurse practitioner for Public Health
11  Seattle-King County, whose declaration was filed in support of Defendants' summary judgment
12  motion, states that the King County Department of Adult and Juvenile Detention ("DAJD") has
13  taken necessary steps to address MRSA infection within the DAJD population.  Dkt. #37, para.
14  4.  Mr. Danforth states that the RJC is in compliance with the most recent Federal Bureau of
15  Prisons Clinical Practice Guidelines for the Management of Methicillin-Resistant
16  Staphylococcus Aureus Infections (October 2003 version).  *Id.*, para. 6 and Ex. B.  Lastly, he
17  cites to estimates by the Communicable Disease-Epidemiology Division of Public Health-King
18  County, which show an increasing number of MRSA cases in King County among vulnerable
19  subjects such as intravenous drug users and those living on the streets, and those same subjects
20  spend time in DAJD facilities.  *Id.*, para. 12.

21  (2) *Cause of Plaintiff's MRSA infection and subsequent outbreaks.*

---

[1] Plaintiff's proposed second amended complaint includes affidavits from other inmates who allege a MRSA epidemic at the RJC and/or who claim to have contracted MRSA because of the RJC policy not to quarantine inmates with draining abscesses.  Dkt. #42-3, para. 34, 35.

REPORT AND RECOMMENDATION
Page -5-

1    Plaintiff's alleges that he contracted MRSA while at the RJC because RJC staff failed to
2 isolate MRSA positive inmates and maintained unsanitary facilities. Dkt. #46, para. 4. Plaintiff
3 also maintains that because he did not receive the additional treatment he requested, he
4 experienced recurrent outbreaks while he was incarcerated at the Washington Corrections
5 Center (*Id.* para. 20) and at the Washington State Reformatory (*Id.* para. 21, 23). Defendants
6 deny any knowledge of Plaintiff's recurrent infections after the completion of the antibiotic
7 treatment and wound care protocols at the RJC. Dkt. #45-2.

IV.  DISCUSSION

A. <u>Motion to Amend Complaint</u>

As a preliminary matter, Plaintiff argues for leave of the court to amend his complaint pursuant to Rule 15(a) and stay Defendants' summary judgement motion. Plaintiff states that the amendments remove several defendants, streamline the litigation process, and are based upon the same transactions and occurrences as the Plaintiff's First Amended Complaint.[2]

Defendants oppose Plaintiff's motion to amend his complaint for reasons of substantial prejudice, undue delay, and futility. Defendants argue that Plaintiff's proposed second amended complaint seeks to present new evidence well beyond the discovery cutoff and void Defendants' properly filed summary judgment. Furthermore, Defendants suggest that Plaintiff is trying to tailor his complaint to respond to the arguments set forth in the pending summary judgment motion.

A complaint can be amended after a responsive pleading has been filed only by leave of the court, as justice so requires, or by the written consent of the adverse party. Fed. R. Civ. P. 15(a). In deciding whether to grant leave to amend, a court should consider the following

---

[2] Plaintiff's proposed second amended complaint dispenses with claims against individually named defendants Lorenzen, Holtgeerts, Ray, Mayes, and John and Jane Does 1-20, and includes additional allegations and modified claims. Dkt 42-3, *Ex. 1*.

Page -6-

factors: undue delay, bad faith, repeated failure to cure deficiencies (by amendments previously allowed), futility of the amendment, and prejudice to opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). While all are relevant factors, the crucial factor is resulting prejudice to opposing party. *Id.* Absent undue prejudice to the defendant, a trial judge should permit the amendment of the complaint. *Brier v. Northern California Bowling Proprietor's Ass'n.*, 316 F.2d 787 (9th Cir. 1963).

Plaintiff's motion to amend his complaint is denied for reasons of undue prejudice and undue delay. Although Plaintiff filed his first amended complaint *pro se*, his present counsel entered his notice of appearance in the case on July 18, 2005 (Dkt. #26), which was ten days before Defendants filed their answer to Plaintiff's amended complaint (Dkt. #28). Plaintiff's counsel offers no reason for waiting until May 11, 2006, nearly ten months later and after Defendants filed their summary judgment motion, to move to amend the complaint.

Moreover, the Plaintiff's proposed second amended complaint is based upon Plaintiff's own recollections that MRSA positive inmates were not quarantined because of cost. Dkt. #42-3, Ex. 1, para. 15. However, Plaintiff provides no reason for his neglect in failing to disclose this allegation earlier. Granting Plaintiff's motion to amend now, based upon relevant allegations known to, but not previously disclosed by him, and testimony that could have been gathered earlier, both without explanation, would allow Plaintiff to amend his complaint to circumvent the defendants' summary judgment motion, and unnecessarily requires additional and extensive discovery by the Defendants. The result would be undue delay and undue prejudice to Defendants.

Accordingly, the Court denies Plaintiff's motion to amend the complaint and stay summary judgment motion (Dkt. #42), and instead considers the pending summary judgment motion in light of the first amended complaint (Dkt. #10).

B.  Motion for Summary Judgment

Page -7-

Defendants argue for summary judgment on grounds that: (1) there is no showing of an Eighth Amendment violation based upon "cruel and unusual punishment"; (2) there is no showing of any individual liability for deliberate indifference to Plaintiff's medical needs; and (3) supervisory personnel are entitled to qualified immunity. Dkt. #35-1.

1. *Summary Judgment Standard*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The court is required to draw all inferences in the light most favorable to the non-moving party. *Id.* at 248. A material fact is one which is relevant to the outcome of the pending action. *Id.*

In response to a summary judgment motion, the nonmoving party may not rest upon mere allegations or denial in the pleadings; the nonmoving party must submit specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his/her case. Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252.

2. *Plaintiff's Eighth Amendment Claims*

Plaintiff claims that Defendants acted with deliberate indifference to his health and safety. Specifically, he claims that Lorenzen and John and Jane Does 1-20 acted with deliberate indifference in the treatment and care of his MRSA infection by denying him a nasal decolonization treatment, that led to recurrent outbreaks. Dkt. #46, para. 19. Plaintiff alleges that the King County Public Health and Jail Service medical protocols for the treatment and containment of MRSA positive inmates and the acceptance and promulgation thereof by Directors Holgeerts, Ray, and Mayes, amount to a deliberate indifference to his health and

safety.³ Dkt. #44-2. The Plaintiff alleges that such protocols failed to adopt reasonable measures, namely a mandatory isolation of MRSA positive inmates that would have prevented his initial contraction of MRSA while at the RJC. Dkt #46, para. 4. Defendants argue that there is no factual basis to establish Constitutional or federal statutory deprivation of rights with regard to the health and safety of Plaintiff while in the care of the RJC. Dkt. #50. Rather, Defendants maintain that Plaintiff received the appropriate medical treatment for his MRSA infection while at the RJC. *Id.*

Plaintiff may establish a cause of action for deprivation of a right guaranteed under the Constitution or by federal statute by demonstrating that officials acted with deliberate indifference to his health or safety. For a cognizable claim under the Eighth Amendment, Plaintiff must demonstrate direct participation with deliberate indifference to his medical care *Estelle v. Gamble,* 429 U.S. 97, 105-106, 97 S.Ct. 285, 50 L.Ed..2d 251 (1976), namely, that officials knew that he faced substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it, *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is not enough to show that officials should have known of the risk to prove deliberate indifference. *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002). It is not enough to show gross negligence on the part of officials to prove deliberate indifference. *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990). It is not enough to show differing opinions regarding the appropriate medical treatment of a prisoner to prove deliberate

---

³ *Interim Guidelines for Evaluation & Management of Community-Associated Methicillin-Resistant Staphylococcus Aureus Skin and Soft Tissue Infections in Outpatient Settings*, indicates that treatment to eradicate MRSA colonization (decolonization) is not routinely recommended; the efficacy of such has not been established. Dkt. #37, Ex. E; *see also, Jail Health Clinical Guideline: MRSA Wound Management* (December 15, 2004), Dkt. #37, Ex. C; *Federal Bureau of Prisons Clinical Practice Guidelines for the Management of Methicillin-Resistant Staphylococcus Aureus infections* (October 2003 version). Dkt. #37, Ex. B.

Page -9-

indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### a. Della Lorenzen and John and Jane Doe 1-20

Plaintiff has failed to provide specific evidence that establishes a genuine issue of material fact as to whether Lorenzen was deliberately indifferent to his medical needs. Plaintiff's medical records clearly indicate that his infection had been successfully treated when he requested the nasal decolonization therapy. Dkt. #37, Ex. D. Lorenzen states that after reviewing the Plaintiff's medical records, she decided not to proceed with the therapy because Plaintiff had no recurrent infections. Dkt. #38, para. 10, 11. Lorenzen states that her decision was consistent with applicable standards of care, whereas decolonization is reasonable for patients with recurrent MRSA *and* "MRSA infections with ongoing transmission in a well-defined cohort with close contact. [4] " *Id.*, Ex. C. Plaintiff also admits to no recurrent MRSA infections at the time he requested the additional treatment from Ms. Lorenzen. Consequently, Lorenzen was not deliberately indifferent to the Plaintiff's medical needs when she followed recommended guidelines that preclude decolonization except under certain circumstances, which the Plaintiff did not meet.

As to the defendants identified as John and Jane Doe 1-20, the law requires that the plaintiff identify each individual official and demonstrate that he or she has personally participated in the denial of his Eighth Amendment rights. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Because the plaintiff has failed to individually name each of the "Doe" defendants, he cannot proceed to demonstrate that each has directly

---

[4] At the time, the applicable standard of care was defined by (the) *Interim Guidelines for Evaluation & Management of Community-Associated Methicillin-Resistant Staphylococcus aureus Skin and Soft Tissue Infections in Outpatient Settings*, which state that treatment to eradicate MRSA colonization is not routinely recommended and the efficacy of such is questionable. Dkt. #38, Ex. C; *see also*, Dkt. #37, Ex. E.

Page -10-

participated with deliberate indifference to his medical care.  Moreover, even if the plaintiff had identified each individual official, his medical records show extensive care provide by RJC medical employees including: (1) he was provided a culture to diagnose his MRSA infection; (2) he was given antibiotics to treat that infection, as well as pain reliever to address the distress associated with the abscess; and (3) he was seen eight times over the course of infection for wound care/dressing changes and had a final follow-up visit to confirm that the abscess had healed.  Dkt. #37, Ex. D.

        b.  Directors Holtgeerts, Ray, and Mayes

Plaintiff has failed to provide specific evidence that establishes a genuine issue of material fact as to whether Directors Holtgeertz, Ray, and Mayes were deliberately indifferent to his medical needs by accepting and promulgating King County Public Health and Jail Service medical protocols for the treatment and containment of MRSA positive inmates.  In support of his allegations, Plaintiff submits the affidavits of four inmates (Dkt. #45-7, Ex. I), two of whom are infected with MRSA, and the medical opinion of Dr. Robert Killian.  Dkt. #45-6, Ex. G, H.  The four inmates claim that MRSA was rampant in the RJC and that sanitary conditions were grim.  Dkt. # 45-7, *Ex. I*.  Citing to the inmates affidavits and Plaintiff's medical records, Dr. Killian faults the RJC for not sourcing the cause of the MRSA infection, for maintaining unsanitary conditions, and for failing to isolate MRSA positive inmates.   Dkt. #45-6, Ex. H.

First, however, Plaintiff has offered no proof that he actually contracted MRSA at the RJC.  Second, sourcing the cause of the MRSA infection is problematic.  Dr. Killian characterizes MRSA as "a common and dangerous skin infection pandemic" and states that, "There does not seem to be any group missed by this pandemic--it crosses into all racial and social economic groups." *Id.*  The Centers for Disease Control and Prevention estimate that 25% to 30% of the population is colonized with staph bacteria, and 1% is colonized with

Page -11-

MRSA. Dkt. #36, Ex. A. Consequently, given the nature of MRSA and the transient nature of inmates at the RJC, identifying the source of Plaintiff's MRSA infection is speculative.

Furthermore, the Court finds that the protocols set forth in *The Federal Bureau of Prisons Clinical Practice Guidelines for the Management of Methicillin-Resistant Staphylococcus Aureus Infections* are consistent with independent, non-prison MRSA quarantine and therapy recommendations.[5] Both recommendations suggest that the a treatment to eradicate MRSA colonization is not routinely recommended because the efficacy of such methods to reduce MRSA recurrence and transmission, in the outpatient setting have not been established. However, it may be reasonable to consider decolonization for patients with recurrent MRSA infections *and* MRSA infections with ongoing transmission in a well-defined cohort with close contact. Dr. Killian's recommendation to isolate MRSA positive inmates is a compelling difference of medical opinion that challenges the medical protocols followed by Defendants, who suggest isolation is only necessary for noncompliant patients in circumstances of cohort housing. However compelling, the Court finds that this difference in opinion concerning the appropriate protocol does not rise to the level of a deliberate indifference to serious medical needs.[6]

---

[5] *Interim Guidelines for Evaluation & Management of Community-Associated Methicillin-Resistant Staphylococcus Aureus Skin and Soft Tissue Infections in Outpatient Settings*, Infectious Diseases Society of Washington, Dkt. #37, Ex. E.

[6] A difference in opinion between professionals concerning the appropriate course of treatment generally does not amount to a deliberate indifference to serious medical needs. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). To establish otherwise, the Plaintiff "must show that the course of the treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to plaintiff's (prisoner's) health." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1978-79, 128 L.Ed.2d 811 (1994). This Court finds that the King County Public Health and Jail Service medical protocols do not dictate a course of treatment that was medically unacceptable under the circumstances, nor is there a conscious disregard of the excessive risk to inmates' health.

Page -12-

    c. <u>King County</u>

Under 42 U.S.C. § 1983 the Plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the moving force behind the injury alleged... the municipal action was taken with the requisite degree of culpability and (the Plaintiff) must demonstrate a direct causal link between the municipal action and the deprivation of (his) federal rights." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (*citing Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The Plaintiff has failed to provide specific evidence that establishes a genuine issue of material fact as to whether the policies of King County caused his injury. Specifically, Plaintiff has failed to provide evidence that, but for the policy of only quarantining MRSA positive inmates who are non-compliant, he contracted MRSA. Plaintiff's mere allegation that he contracted MRSA at the RJC is insufficient. Plaintiff also failed to provide evidence that, but for the policy of reserving decolonization for recurrent MRSA positive inmates, he suffered subsequent outbreaks. As previously mentioned, independent and well recognized medical agencies discourage routine decolonization and question the efficacy of the treatment. Because the plaintiff cannot demonstrate the causal link between the municipal policy and the deprivation of his federal rights, King County cannot be held liable.

    3. *Qualified Immunity*

Defendants, Lorenzen and Directors Holtgeerts, Ray, and Mayes, assert an affirmative defense of qualified immunity under 42 U.S.C. § 1983. Qualified immunity protects defendants performing discretionary functions from liability for civil damages so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the

Page -13-

Supreme Court clarified the test to be applied in evaluating claims of qualified immunity. The threshold inquiry in a qualified immunity analysis is whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Id.* at 201. If the reviewing court concludes that no constitutional right was violated by the defendant's conduct, the court need not inquire any further. *Id.* Because this Court has concluded that the Plaintiff's Constitutional rights have not been violated, we need inquire no further.

### 4. *Plaintiff's Claim Under RCW 7.70.040*

Plaintiff contends that defendants Lorenzen and John and Jane Does 1-20 failed to take reasonable care to prevent his contraction of MRSA, and provided inadequate care for his MRSA infection, which led to subsequent outbreaks. The Plaintiff broadly claims liability due to "negligence, medical malpractice, failure to exercise due diligence, failure to diagnose, treat or otherwise act with reasonable care to prevent diseases, treat diseases and/or prevent them from worsening or remaining to exist." Dkt. #10, para. 35. Defendants argue that under RCW 7.70.040, expert testimony is generally required to establish a standard of care and causation for injury. Dkt. #35-1. Consequently, because Plaintiff has failed to provide the requisite expert medical testimony, the claim should be dismissed. *Id.*

The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because defendants are entitled to summary judgment with respect to each of the Plaintiff's federal constitutional claims, this Court denies review of the Plaintiff's state law claims.

## V. CONCLUSION

Page -14-

For the foregoing reasons, this Court denies Plaintiff's motion to amend the complaint and stay the summary judgment, and recommends that Defendants motion for summary judgment be granted, and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of December, 2006.

_____
MONICA J. BENTON
United States Magistrate Judge

Page -15-